UNITED STATES of America, Appellee,

v.

David CAMPBELL and Michael Tartt, Defendants-Appellants.

Nos. 619, 620, Dockets 77–1418, 77–1419.

United States Court of Appeals, Second Circuit.

Argued Feb. 8, 1978.

Decided June 29, 1978.

Ralph S. Naden, New York City, for defendant-appellant David Campbell.

Julius Wasserstein, Brooklyn, N. Y., for defendant-appellant Michael Tartt.

Lawrence Iason, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, Robert J. Jossen, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before FEINBERG, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

MANSFIELD, Circuit Judge:

David Campbell and Michael Tartt appeal from judgments of conviction entered in the Southern District of New York following an eight-day trial before Judge Lawrence W. Pierce and a jury. Tartt was convicted on all three counts of an indictment that charged him with conspiracy to commit armed bank robbery, 18 U.S.C. § 371, bank robbery, 18 U.S.C. § 2113(a), and armed bank robbery, 18 U.S.C. § 2113(d). Campbell was convicted only on the conspiracy count, and acquitted on the two substantive counts.[1]

The principal claim on appeal is that the district court committed reversible error in not excluding evidence seized from the defendants' apartment. Appellant Tartt also challenges the admission of certain identification testimony at trial. Finding these claims unpersuasive, we affirm.

The essential facts of the crime are not disputed. On April 4, 1977, at approximately 10:30 A.M., three men, including Wallace Hall, who testified against appellants at trial, robbed a branch of the Chemical Bank

---

1. On September 19, 1977, Judge Pierce sentenced Campbell to a term of imprisonment of four and a half years. He sentenced Tartt to concurrent terms of imprisonment of five years and 10 years.

at Cathedral Parkway and Broadway in New York City. Approximately $19,000 was taken. Two of the robbers were armed, one with a revolver, the other with a sawed-off shotgun. Moments after the robbery Hall became separated from his accomplices during their getaway, and was arrested in a subway station near the bank.

Hall was taken back to the bank where he was identified by eye-witnesses as one of the robbers. He was then questioned by New York City police officers and federal agents, and between 1:00 and 2:00 P.M. in the afternoon he confessed to his participation in the crime. Hall admitted that his accomplices were friends known to him only as "Dave" and "Mike," and that they lived in the same apartment building where Hall lived. He also gave the officers general descriptions of the two men.

Between 2:00 P.M., when this information was obtained from Hall, and 6:00 P.M., when appellants were arrested, police detectives and federal agents worked together on the investigation. In addition to sharing responsibility for the continued questioning of Hall, they also verified the information he gave them concerning the whereabouts of "Mike" and "Dave," interviewed witnesses at the bank, and arranged to have the bank's surveillance photographs developed.[2]

At approximately 4:15 P.M. FBI Agent Martinolich, the case agent in charge of the investigation, telephoned an Assistant United States Attorney to obtain authorization for making the arrests of appellants. According to Martinolich's testimony at the pretrial suppression hearing, the purpose of this procedure is to permit the United States Attorney's staff to make a legal judgment as to whether or not an arrest should be made and whether or not a warrant should be obtained. The Assistant with whom Martinolich spoke authorized the agents to make the warrantless arrests.

Martinolich then picked up the developed surveillance photographs and met with other agents and detectives to plan the arrest procedures. Campbell and Tartt were arrested in their respective apartments at approximately 6:00 P.M., and various items of evidence were seized during the arrests.[3]

The defendants moved prior to trial to suppress this evidence on the ground that the warrantless arrests were unlawful, and that the evidence seized during the arrests was obtained in violation of their Fourth Amendment rights. Judge Pierce denied the motion after a five-day hearing, holding that exigent circumstances justified the warrantless arrests, and finding no other

2. Some of the delay in making the arrests was attributable to confusion that arose concerning the information Hall gave the police about the apartment building where he, Tartt, and Campbell lived. Initially Hall told the police that "Mike" and "Dave" lived at 579 Academy Street, and that Mike's apartment number was 4B. Agents sent to verify this information discovered that the apartment building at 579 Academy Street had no apartment numbered 4B.

Hall later clarified the location of the apartments. He told the officers that the apartment building had two addresses—571 and 579 Academy Street—and that Mike's apartment, numbered, 4B, could be reached from the 571 Academy Street entrance. Hall also told the agents that the entrance to Dave's apartment was on Post Avenue and that a blue rug was in front of the door to his apartment. This information was verified by federal agents and the police prior to the arrests.

3. The two arrests were made simultaneously. A group of federal agents and police officers went to Campbell's apartment, knocked, and

identified themselves. When Campbell opened the door, he was arrested. The following items were seized from his apartment and introduced into evidence at trial: (1) $10,000, including several bills, the serial numbers of which matched those of bills whose numbers had been recorded by the bank before the robbery, i. e., "bait money," (2) a black vinyl suitcase, (3) a shotgun and shotgun shells, (4) a white ski cap and a jacket which matched the description of clothing worn by one of the bank robbers.

While Campbell was being arrested, a second group of agents and detectives went to Tartt's apartment, knocked on the door, and identified themselves. The testimony at the suppression hearing was that the officers then heard what sounded to them like footsteps running away from the door. They then forced the door open and arrested Tartt, whom they found in the bedroom of the apartment. A pair of pants and a jacket were seized by the agents and were later introduced at trial; they also matched a description of clothing worn by one of the bank robbers.

basis for suppressing the evidence seized from appellants' apartments.

## DISCUSSION

█ For reasons that are thoroughly analyzed and explicated in our recent decision in *United States v. Reed,* 572 F.2d 412, 417–424 (2 Cir. 1978), the warrantless entry of law enforcement officers into the private home of a suspect, for the purpose of making an arrest supported by probable cause, is barred by the Fourth Amendment in the absence of "exigent circumstances," see *United States v. Killebrew,* 560 F.2d 729 (6th Cir. 1977); *United States v. Calhoun,* 542 F.2d 1094 (9th Cir. 1976), *cert. denied,* 429 U.S. 1064, 97 S.Ct. 792, 50 L.Ed.2d 781 (1977); *Dorman v. United States,* 140 U.S. App.D.C. 313, 435 F.2d 385 (1970) (*en banc*). We have thus resolved in this circuit an issue that has long been left open by the Supreme Court. See *Coolidge v. New Hampshire,* 403 U.S. 443, 480–81, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Watson,* 423 U.S. 411, 418 n. 6, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).

The question before us on this appeal, therefore, is whether the circumstances surrounding the arrests of Campbell and Tartt were sufficiently "exigent" to excuse the agents' failure to obtain a warrant. The answer requires us first to examine the meaning and limits of the term "exigent" in order to determine whether the circumstances here may be so labelled.

█ The phrase "exigent circumstances" refers generally to those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which probable cause exists, unless they act swiftly and, without seeking prior judicial authorization. For instance, officers in "hot pursuit" of an armed robber who has just committed the crime may follow him into his home without obtaining a warrant.

"Speed here was. essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape.

" . . . Here, the seizures occurred prior to or immediately contemporaneous with Hayden's arrest, as part of an effort to find a suspected felon, armed, within the house into which he had run only minutes before the police arrived. The permissible scope of search must, therefore, at the least, be as broad as may reasonably be necessary to prevent the dangers that the suspect at large in the house may resist or escape." *Warden v. Hayden,* 387 U.S. 294, 299, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782 (1967).

Such "hot pursuit," however, is but an illustration, not a definition of the kind of circumstances that justify a warrantless entry for the purpose of making an arrest or search. *Dorman v. United States, supra,* 140 U.S.App.D.C. at 319, 435 F.2d at 391. The actual commission of a crime within a dwelling may also be sufficient to permit an immediate entry. Police who witness an attempted homicide or other crime of violence being committed by a person in his home need not delay entry while first obtaining a warrant, since to do so would only serve to tolerate the commission of the crime itself.

"When law enforcement officers have probable cause to believe that an offense is taking place in their presence and that the suspect is at that moment in possession of the evidence, exigent circumstances exist. Delay could cause the escape of the suspect or the destruction of the evidence." *United States v. Watson,* 423 U.S. 411, 435, 96 S.Ct. 820, 833, 46 L.Ed.2d 598 (1976) (J. Marshall, dissenting).[4]

4. The passage from Justice Marshall's dissent in *Watson* obviously refers to an arrest in a public place, but the rationale seems equally applicable to that narrow category of cases in

which a law enforcement officer, though not on the premises, becomes aware of an incipient or on-going crime within a dwelling. At that point, the officer would have probable cause to

██ In short, circumstances which, when viewed as of the time of entry, would lead a reasonable person to believe that unless an entry and arrest are made immediately the suspect may escape, destroy essential evidence or continue the commission of an on-going crime, represent exigencies of the type justifying immediate police action on probable cause without first obtaining a warrant. See *United States v. Santana, supra,* 427 U.S. at 44, 96 S.Ct. 2406 (J. Stevens, concurring); *United States v. Titus,* 445 F.2d 577, 578 (2d Cir. 1971), quoting *Jones v. United States,* 357 U.S. 493, 499–500, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). Among the factors deemed relevant in determining whether the circumstances are sufficiently exigent to permit a warrantless entry and arrest are:

"(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect 'is reasonably believed to be armed'; (3) 'a clear showing of probable cause . . . to believe that the suspect committed the crime'; (4) 'strong reason to believe that the suspect is in the premises being entered'; (5) 'a likelihood that the suspect will escape if not swiftly apprehended'; and (6) the peaceful circumstances of the entry." *United States v. Reed, supra,* 572 F.2d 412, 424 (2d Cir. 1978), quoting *Dorman v. United States, supra,* 140 U.S. App.D.C. 320–321, 435 F.2d 392–93 (footnotes omitted).

██ Applying these principles to the present case, we agree with Judge Pierce that the government has met the burden of showing exigent circumstances to justify the warrantless arrests of Campbell and Tartt in their apartments. The crime was a serious and violent one—armed robbery, punishable by imprisonment up to 25 years. The arrests were made at 6:00 P.M. on April 4, 1977, while it was still daylight.[5] The arrests were supported strongly by probable cause. Based on information obtained from Hall, which was corroborated by the bank surveillance photos and witnesses to the robbery, there was good reason to believe that Campbell and Tartt had participated in the robbery, that they were then in their apartments, that they were armed, and that they had in their possession money robbed from the bank. Their knowing possession of the money taken during the robbery alone constituted a separate and continuing crime in violation of 18 U.S.C. § 2113(c).[6]

There were also reasonable grounds to believe that the appellants may have been informed of Hall's arrest, or may have surmised the same from his absence, and that unless they were arrested immediately, they might attempt an escape, taking advantage of the impending darkness. Moreover, had the officers decided to set up surveillance of the apartments while waiting for a warrant to be issued, they would have risked the possibility of detection by appellants. If appellants had been alerted to the presence of the police, they might well have had sufficient time to dispose of the stolen money and other evidence in their possession. Furthermore, the risk of an armed confrontation would have thus been heightened. To secure a warrant would have required the police and agents to wait at least several more hours until the facts were fully communicated to headquarters, typed in affidavit form, attested to, presented to one

---

act, and the exigent circumstances of the situation would compel that he do so without first obtaining a warrant.

**5.** An additional factor to be assessed in gauging the reasonableness of a warrantless entry relates to the time of the entry, especially whether it is made at night. Since a nighttime entry may more seriously intrude on protected privacy interests than a daytime entry, *Jones v. United States, supra,* at 498, 78 S.Ct. 1253; *Dorman v. United States, supra,* 140 U.S.App.

D.C. at 317, 435 F.2d at 389, the government may face a heavier burden in demonstrating the reasonableness of its action than it otherwise would.

**6.** 18 U.S.C. § 2113(c) prohibits the receipt or possession of "any property or money or other thing of value knowing the same to have been taken from a bank, credit union, or a savings and loan association, in violation of subsection (b) of this section . . . ."

of the district's busy magistrates, and a warrant obtained in due course.[7]

Viewing the totality of these circumstances, we cannot label as erroneous the district court's finding that they were sufficiently exigent to allow immediate entry and arrest. In reaching this conclusion we also take into consideration the overall reasonableness of the behavior of the officers and police in this case. If appellants' apartments had been raided immediately after Hall told the police where "Mike" and "Dave" lived, the circumstances might have appeared more "exigent" because the pursuit would have been hotter. On the other hand, such a decision would not necessarily have been more reasonable from a constitutional standpoint. Agent Martinolich testified that he did not want to make the arrests until Hall's information concerning appellants' whereabouts had been confirmed, and until the bank surveillance photographs were available to facilitate identification, which was not until after 4:30 P.M. Moreover, considerable time was expended checking out Hall's description of the premises where Campbell and Tartt might be found.[8] In addition, the officers showed their respect for the Fourth Amendment by contacting an Assistant United States Attorney prior to the arrests for an evaluation of their probable cause to act, and a judgment as to whether a warrantless arrest would be legal.[9]

Such prudence on the part of law enforcement officers should not be discouraged, which might well be the effect of a holding that the arrests in this case were unconstitutional. Although we now know, with the aid of 20–20 hindsight, that Hall's earlier-furnished information was reasonably accurate, the agents would hardly have been justified in giving his unverified statements credence when they were first obtained. Once the information was verified, which took time, the agents were not obligated by the Fourth Amendment, in the face of such an emergency to then aggravate the existing risk of violence, escape and destruction of crucial evidence by waiting until a warrant could be obtained. *United States v. Titus*, 445 F.2d 577 (2d Cir.), *cert. denied*, 404 U.S. 957, 92 S.Ct. 323, 30 L.Ed.2d 274 (1971).

Appellants also contend that even if the arrests were lawful the agents and police unlawfully searched their apartments. Judge Pierce rejected this claim on the ground that the evidence seized was either (1) taken incident to a lawful arrest, *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), (2) in plain view at the time of the seizure, *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), or (3) discovered pursuant to a consent search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

■ Turning first to Tartt's challenge to the admissibility of a pair of pants and jacket taken from his apartment, which were on a chair in the room where Tartt was arrested, since they were in plain view of the officers who were lawfully present, their seizure was valid. *Coolidge v. New Hampshire, supra*, 403 U.S. 443, 464–73, 91 S.Ct. 2022, 29 L.Ed.2d 564.

■ Campbell's challenge to the admissibility of the shotgun, shells, and $10,000 found in his apartment is more troublesome. Rejecting Campbell's testimony to the contrary, Judge Pierce, on the basis of

7. Agent Martinolich testified during the suppression hearing that it takes between four and five hours to obtain an arrest warrant in the Southern District of New York. This testimony was uncontradicted, and was credited by Judge Pierce.

8. See note 2, *supra*.

9. We do not suggest that an Assistant U.S. Attorney possesses the neutrality and detachment of a judicial officer, *Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948), or that the procedure described in this opinion could possibly satisfy the warrant requirement. But the fact that the agents submitted their information to someone, even a prosecutor, for a judgment as to its legality prior to taking any action, is indicative of attitudes and behavior which the warrant requirement and exclusionary rule seek to foster. See *United States v. Titus, supra*, 445 F.2d 577, 579.

other proof, found that Campbell voluntarily consented to a search of his apartment, including the locked nightstand where this evidence was found. Moreover, he found that the key to the nightstand was given to the officers "at Campbell's request" by a friend of Campbell who was present during the arrest. The money, which was in a small suitcase, was found by an officer who seized the suitcase while securing the apartment. Judge Pierce held that the suitcase was properly seized because it was within the area into which an "arrestee might reach in order to grab a weapon or evidentiary items." *Chimel v. California, supra,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685.

Judge Pierce reached these findings after a five-day hearing during which he heard the testimony of the law enforcement officers involved, as well as that of the defendants and others who were present in the apartments at the time of the arrests. Resolution of the conflicts in testimony concerning the search of Campbell's apartment was essentially a question of credibility for the district judge, whose findings we will not disturb unless they are clearly erroneous. *United States v. Wiener,* 534 F.2d 15, 17 (2d Cir. 1976). Absent proof of any such error, we accept the trial judge's appraisal and findings.

■ Finally, Tartt contends that the in-court identification of him by a bank teller was unfair in that the identification witness had not attended a pretrial line-up. This claim is without merit. We recently held that "a defendant has no constitutional right to a line-up." *United States v. Estremera,* 531 F.2d 1103, 1111 (2d Cir. 1976). Whether or not a court orders a line-up is a matter within the sound discretion of the trial judge. *Id.* We cannot find that Judge Pierce abused his discretion in permitting one witness to make an in-court identification even though she had not first made a selection from a line-up.

There is no serious claim that the witness lacked a reliable basis for her identification. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). No "taint"

hearing out of the jury's presence was requested. Indeed, it was not even contended that this particular witness had been subjected to any unfairly suggestive influence. The witness was a bank teller who testified that she saw Tartt, who wore no mask, for between one and two minutes when he approached her, stated "this [is] a bank robbery," and instructed her to move back from the counter. Although Tartt's counsel objected to the in-court identification, he did not request that Tartt be accorded at trial the equivalent of a line-up, in or out of the jury's presence, which Judge Pierce would probably have granted. The jury, moreover, did observe the in-court identification, about which the witness was fully cross-examined, and there is no suggestion that the government impeded the witness from participating in an earlier pretrial line-up held at Tartt's request, in which the other bank witnesses participated. Under the circumstances, it is clear that the identification testimony was not unfairly prejudicial for lack of a prior line-up.

For the foregoing reasons, we affirm the convictions of both appellants.