**UNITED STATES of America, Plaintiff,**

v.

**Hernando ALONZO, Jr. and Maurice Guy Bouzon, Defendants.**

No. 82 Cr. 232 (JES).

United States District Court, S. D. New York.

July 6, 1982.

John S. Martin, Jr., U. S. Atty. for the S.D.N.Y., New York City, for plaintiff; Edward J. M. Little, Asst. U. S. Atty., New York City, of counsel.

Siegel, Donlevy, Corenthal & Silverglate, New York City, for defendants; Norman T. Corenthal, New York City, of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge:

This case arises out of an undercover police operation conducted by the New York Drug Enforcement Task Force. As a result of that operation, defendants Maurice Bouzon ("Bouzon") and Hernando Alonzo ("Alonzo") are charged with conspiring to violate the federal narcotics laws and with distributing and possessing with intent to distribute cocaine. Alonzo has moved to suppress all evidence seized from his hotel suite.[1]

The facts of this case are largely uncontroverted. Detective Robert Johnson ("Johnson"), posing as a purchaser of cocaine, was introduced to Bouzon by a confidential informant. On March 11, 1982, Johnson met with Bouzon and negotiated the purchase of approximately five kilograms of cocaine. According to the terms of the deal, Johnson initially would purchase an eighth of a kilogram (the "eighth") for $7,500. Approximately one hour later, a full kilogram would be delivered for which payment of $60,000 was to be made. That sale was to be followed by the delivery of one kilogram per hour until the full five kilograms had been delivered.

---

1. The evidence includes a variety of drug paraphernalia such as a cutting agent, scales, strainers and a grinder. With the exception of a brown plastic bag containing three bags of white powder, all the evidence was seized after Alonzo consented to a search of the suite. The brown plastic bag was discovered during the course of a security check.

The following day Johnson received a call from the confidential informant who advised him that the sale would take place that night at the Gramercy Park Hotel where Bouzon was staying. Later that evening, Johnson and the informant proceeded to the bar of the hotel where they met Bouzon. When Bouzon indicated that he had on his person the eighth of cocaine, Johnson and Bouzon left the hotel to complete the first stage of the transaction. As they exited the main entrance of the hotel, Alonzo approached them and inquired of Bouzon, "Is there a problem? Is everything all right?" Bouzon responded, "No everything is okay. I'm going with Bobby to the car to get the money. Go directly to the room. Wait for the call. When the call comes in, tell them everything is all right and bring the package."[2]

Thereafter, Alonzo was observed entering the hotel and crossing the lobby to the elevator bank. Johnson and Bouzon proceeded to Johnson's car where, after Bouzon gave Johnson the cocaine and Johnson gave the back-up officers a pre-arranged signal, Bouzon was arrested by Officer McDonald ("McDonald"). McDonald and Investigator Vetrano ("Vetrano") placed Bouzon in their car and advised him of his rights. McDonald requested permission to search the suite to which Bouzon replied, "I don't mind." When informed of his right to refuse his consent, Bouzon stated, "No, there is no more cocaine in the room. You go up to the room and look." Bouzon's consent was not communicated to Johnson.

Meanwhile, immediately following Bouzon's arrest, Johnson and Sergeant Rollo ("Rollo") decided to effect Alonzo's arrest. The informant was instructed to call room 1002 and tell Alonzo that Bouzon wanted him to join them at the bar. Johnson and Rollo then proceeded to room 1002. As they waited outside the door, they heard the telephone ring and a male's voice in conversation. Seconds later, Alonzo opened the door whereupon Johnson identified himself as a police officer, stepped into the room and effected the arrest. Rollo then proceeded to secure the suite to make certain that there were no other persons in the rooms who might pose a threat to the security of the arresting officers.[3]

While checking the bedroom, Rollo observed a brown plastic bag on the floor near the dresser. According to Rollo's uncontroverted testimony the bag was open and he was able to see three clear plastic bags containing a white powder. Rollo placed the bag on the dresser but did not otherwise disturb its contents. When Rollo returned to the livingroom, Alonzo, who was handcuffed and seated on the couch, was given his Miranda warnings. When Rollo told Johnson about the brown plastic bag and its contents Johnson asked Alonzo for permission to search the suite. Alonzo responded, "You can search, but if you find anything, I know nothing about it." Johnson then conducted a search which revealed a variety of items including drug paraphernalia. Following the search, the police officers remained in the suite for approximately one hour. During that time they answered two telephone calls.[4]

Alonzo contends that the evidence seized from his hotel suite should be suppressed because it was obtained in violation of his fourth amendment rights. He argues that his warrantless arrest and the subsequent protective sweep of the suite were unlawful because the arrest was prompted not by exigent circumstances, as the government claims, but by an impermissible investigato-

---

**2.** Johnson's testimony regarding Alonzo's conversation with Bouzon was corroborated by Officer McDonald.

**3.** According to Rollo's testimony, the protective sweep lasted between 10 and 30 seconds.

**4.** Both calls were answered by Special Agent Rodriguez. The first was from a female caller who asked for Alonzo. The second, which came approximately one hour after the officers

had entered, was from a male who first asked for Harry and then asked for Maurice. When informed that both Alonzo and Bouzon had stepped out, the caller hung up. Bouzon, who had accompanied the arresting officers back to the room, then stated, "Well, there goes the kilo. You should have let me answer the telephone." Alonzo does not seek to suppress the substance of the telephone calls.

ry motive, to wit, the desire to intercept the expected telephone call. Alonzo further argues that, since the discovery of the brown bag resulted from the unlawful arrest and protective sweep, and since the discovery of the contents of the brown bag gave rise to his consent to search, this Court should find that his consent was inoperative. Finally, Alonzo contends that the record is inadequate to support a finding that Bouzon was authorized to consent to the search of the suite or that Bouzon's consent was given voluntarily.

At the heart of every fourth amendment case is the question of whether the police conduct complained of was reasonable. For the reasons which follow, the Court finds that the law enforcement officers acted reasonably. Therefore, defendant Alonzo's motion to suppress is denied.

■ The Supreme Court has held that, absent special circumstances, a governmental intrusion into the home to conduct a search or to make an arrest is unreasonable unless the arrest is effected or the search is conducted pursuant to a validly issued warrant. *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). It is well settled, however, that the existence of exigent circumstances can justify a warrantless entry into a private residence for the purpose of making an arrest. *United States v. Campbell*, 581 F.2d 22 (2d Cir. 1978); *see Steagald v. United States*, 451 U.S. at 211–12, 213–14, 101 S.Ct. at 1647–48, 1648; *Payton v. New York*, 445 U.S. at 583, 100 S.Ct. at 1378. The Second Circuit has identified a number of factors which it considers to be relevant in determining whether exigent circumstances existed at the time of the entry. These include the gravity or violent nature of the offense, whether the suspect is reasonably believed to be armed, a clear showing of probable cause to believe that the suspect committed the crime, strong reason to believe that the suspect is in the premises being entered, strong reason to believe that

the suspect will escape or destroy evidence if not swiftly apprehended and the peaceful circumstances of the entry. *United States v. Campbell*, 581 F.2d at 26.

■ The Court finds that the government has discharged its burden of demonstrating exigent circumstances. Alonzo was suspected of serious drug related crimes and there was ample evidence of probable cause, to wit: the hotel room out of which Bouzon was operating was registered in Alonzo's name; a man believed to be Alonzo answered the telephone when Johnson called to discuss the impending transaction with Bouzon; Alonzo approached Johnson and Bouzon while they were engaged in the first stage of the five kilogram sale to inquire whether everything was all right; and Alonzo was told by Bouzon that they were going to the car for the money and was directed to return to the hotel room, await a call and tell the caller to bring the package.

There also was strong reason to believe that Alonzo was in the premises being entered. He was told by Bouzon to return to the hotel room and was observed entering the hotel and going to the elevator bank. His presence in room 1002 was confirmed by the telephone call placed to that room by the confidential informant.

Moreover, there was strong reason to believe that Alonzo might have escaped or that evidence would have been lost or destroyed unless Alonzo was apprehended at that time. Johnson and Rollo knew that a kilogram of cocaine was to be delivered within the hour. If the package was to have been delivered directly to Bouzon, it was reasonable for them to have assumed that the courier would have become suspicious because of Bouzon's absence and would not have delivered the narcotics. On the other hand, if the package was to have been delivered to Alonzo in the hotel suite or at some other pre-arranged place, Alonzo would have known that something was amiss when Bouzon failed to contact him about the arrival of the first package or with instructions concerning later deliveries. Since the first full kilogram was scheduled

to arrive within the hour, and might even have been en route, the Court finds that, at the time of entry, the police could reasonably have believed that Alonzo might have escaped or destroyed evidence if not swiftly apprehended. Finally, according to Johnson's uncontroverted testimony, the entry into the hotel suite was peaceful. Alonzo was induced to open the door and the arrest was effected without the use of any undue force. In view of these circumstances, the Court rejects defendant's contention that the arrest was made in the hotel suite as a pretext to effect an otherwise impermissible entry and search.[5]

Having determined that Johnson and Rollo were justified in entering Alonzo's hotel suite to effect his arrest, the question remains whether they violated his fourth amendment rights in conducting the protective sweep and/or the subsequent search.

■ It is well established that law enforcement officers who have lawfully entered premises to effect an arrest are entitled to conduct a limited security check of the premises to determine whether there are any third persons who might pose a threat to their safety or destroy evidence. *United States v. Gomez*, 633 F.2d 999, 1008 (2d Cir. 1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 194 (1981); *see United States v. Martino*, 664 F.2d 860, 869 (2d Cir. 1981); *United States v. Agapito*, 620 F.2d 324, 335–36 (2d Cir.), *cert. denied*, 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980).

■ While a security check is limited to a search for people, not things, *United States v. Agapito*, 620 F.2d at 336, the three plastic bags containing the white substance

which were discovered during the course of the security check were in plain view at the time they were observed. Since Rollo had a right to be where he was at the time he made the observation, the Court finds that the protective sweep was both constitutionally permissible and reasonable in scope.[6] Therefore, the contents of the brown bag are admissible. *United States v. Gomez*, 633 F.2d at 1008.

■ The remainder of the evidence which Alonzo seeks to suppress was discovered and seized pursuant to Alonzo's consent. It is well settled that a search may be conducted without a warrant if a valid consent to search has been obtained. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). According to the testimony elicited at the suppression hearing, Alonzo was not threatened, coerced or abused in any way and no weapons were drawn at the time his consent was obtained. Moreover, Alonzo was informed of his right to refuse to consent and was advised that the search would be terminated if, at any time, he indicated that he wished to withdraw his consent. On the basis of Johnson's testimony, which the Court finds credible and indeed uncontroverted, the Court concludes that Alonzo consented to the search and that his consent was given voluntarily. Since the Court has already found that the warrantless entry and protective sweep were lawful, it is of no consequence that Alonzo's consent might have been prompted, at least in part, by the prior discovery of the contents of the brown plastic bag.

■ Finally, even assuming arguendo that the warrantless entry and subsequent

---

**5.** It should also be noted that an entry into the suite could well have been justified as an incident to Bouzon's arrest. The Second Circuit has held that, when a lawful arrest has been effected on the street outside defendant's apartment and there is a reasonable basis to believe that there are persons in the apartment who are likely to be aware of the arrest and who may destroy evidence, escape or jeopardize the safety of the arresting officers or the public, a warrantless entry into the apartment for a security check is permissible. *United States v. Agapito*, 620 F.2d 324, 336 n.18 (2d Cir.) *cert. denied*, 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d

40 (1980); *accord, United States v. Martino*, 664 F.2d 860, 869 (2d Cir. 1981). As previously discussed, Johnson and Rollo could reasonably have believed that Alonzo was in the hotel suite, that he would have been aware that something was amiss and that he might have escaped or destroyed evidence.

**6.** Of course, had Rollo discovered the brown bag in a drawer or in some other place where a person could not conceal himself, the protective sweep would have been unreasonable in scope.

security check of the hotel suite were unlawful, the evidence seized from the suite would still be admissible because Bouzon consented to the search. It is clear that a person with access to the area searched and either common authority over it, a substantial interest in it or permission to exercise that access, express or implied, may validly consent to a search of that area. *United States v. Buettner-Janusch*, 646 F.2d 759, 765 (2d Cir.), *cert. denied*, 454 U.S. 830, 102 S.Ct. 126, 70 L.Ed.2d 107 (1981). The testimony at the suppression hearing established that Bouzon had access to the suite and, at the very least, had permission to exercise that access. He had a duplicate key to the room, he told both Johnson and McDonald that he was staying in the room and he received telephone calls there on at least two occasions, one of which was answered by Alonzo. Significantly, there was no testimony that Bouzon was not an authorized occupant.

■ The record clearly supports the conclusion that the government has discharged its burden of proving that Bouzon's consent was freely and voluntarily given. *See United States v. Buettner-Janusch*, 646 F.2d at 764. There is simply no indication in the record that Bouzon was threatened, coerced, abused or so emotionally distraught that he was incapable of freely consenting. Indeed, it would appear from the fact that he chose to answer certain questions but declined to answer others that he was well aware of what he was doing.

Bouzon's consent, therefore, provided a valid and independent basis for the search of the hotel rooms. It is clear as a matter of factual inevitability that that search would have occurred even absent any alleged illegality with respect to Alonzo.[7] *United States v. Paroutian*, 319 F.2d 661 (2d Cir. 1963). This is, therefore, not a case in which the protections of the fourth amendment could be subverted by judicial speculation as to what would or would not have occurred. *Cf. United States v. Alvarez-Por-*

*ras*, 643 F.2d 54 (2d Cir.), *cert. denied*, 830 U.S. 454, 102 S.Ct. 146, 70 L.Ed.2d 121 (1981).

The defendant's motion to suppress is denied.

SO ORDERED.

---

7. McDonald, Vetrano and Bouzon proceeded to room 1002 shortly after Bouzon's consent to search was obtained. They arrived while the search pursuant to Alonzo's consent was in progress.