**UNITED STATES of America,**

v.

**Santiago GOMEZ, Defendant.**

**No. 86 CR. 789 (PKL).**

United States District Court,
S.D. New York.

Feb. 5, 1987.

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y. (Avraham C. Moskowitz, Steven A. Standiford, Asst. U.S. Attys. of counsel), for the U.S.

Osvaldo J. Gonzalez, Bronx, N.Y., for defendant.

### OPINION AND ORDER

LEISURE, District Judge:

The defendant, Santiago Gomez, moved to suppress certain physical evidence seized

from Apartment 1–J, 106 Fort Washington Avenue, New York, New York, as well as statements made at the time of his arrest on September 3, 1986. The Government opposed the motion on the ground that exigent circumstances justified a warrantless search and that defendant voluntarily made the statements after being advised of his constitutional rights. An evidentiary hearing was held on February 5, 1987.

## Warrantless Search

■ When, as in this case, a search is conducted without a warrant, the burden of persuasion is on the Government to justify its search. *United States v. Arboleda,* 633 F.2d 985, 989 (2d Cir.1980), *cert. denied,* 450 U.S. 915, 101 S.Ct. 1362, 67 L.Ed.2d 343 (1981). The Government contends that exigent circumstances justified the actions taken by the agents of the Drug Enforcement Administration (the "DEA") in this case. Accordingly, the Government must show that the agents had probable cause to enter the apartment and an urgent need to act before a warrant could be obtained. *United States v. Martinez-Gonzalez,* 686 F.2d 93, 100–01 (2d Cir.1982). *See also United States v. Gomez,* 633 F.2d 999, 1008 (2d Cir.1980) (In addition to probable cause, the Government must show the existence of exigent circumstances.), *cert. denied,* 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 194 (1981).

The Court of Appeals for Second Circuit has described an illustrative list of factors that may be used to determine whether exigent circumstances are present. *United States v. Reed,* 572 F.2d 412, 424 (2d Cir.), *cert. denied,* 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978). These include:

1. The gravity or violent nature of the offense with which the suspect is to be charged;

2. Whether the suspect is reasonably believed to be armed;

3. A clear showing of probable cause to believe that the suspect committed the crime;

4. Strong reason to believe that the suspect is in the premises being entered;

5. A likelihood that the suspect will escape if not swiftly apprehended; and

6. The peaceful circumstances of the entry.

572 F.2d at 424; *see also Martinez-Gonzalez,* 686 F.2d at 100; *United States v. Campbell,* 581 F.2d 22, 26 (2d Cir.1978).

The facts leading to defendant's arrest are as follows.[1] At approximately 5:30 p.m. on September 3, 1986, DEA agents were told that two Dominican men were distributing cocaine from two apartments in a building at 106 Fort Washington Avenue. This information came from a confidential informant (the "informant"), who had previously provided one of the agents with reliable information leading to the arrest and conviction of numerous defendants for violations of federal narcotics laws. The informant's knowledge was based at least in part on the report of another individual who said he had been inside one of the apartments and had seen a pound of cocaine there. The informant told the agents that a total of four kilograms of cocaine was in the two apartments and that it would soon be moved to another location. Although the agents had in the past applied for and received search warrants based on information from the informant, the agents believed that the second-hand report provided by the informant in this instance was an insufficient basis for a warrant. In order to investigate and corroborate the report, the agents decided to go to the apartment building.

A group of about eight to ten agents met the informant at 106 Fort Washington Avenue at approximately 6:30 p.m. The informant accompanied three of the agents inside the building, identified Apartments 1–L and 1–J, which were adjacent, as the

---

1. A complaint sworn to by DEA Agent Thomas Geisel contains the material facts regarding this case. At the evidentiary hearing, defendant failed to produce any witnesses and did not testify himself. Defendant did make a proffer of testimony of two occupants of Apartment 1–L, which the Court has considered to the extent relevant. The Court finds the testimony of the DEA agents to be entirely credible and uncontradicted in any material way.

ones involved in the drug operation, and was then instructed to leave the building. On his way out, the informant told a fourth agent who was then entering the building, Emilio Garcia, that a woman who lived across from Apartments 1–L and 1–J served as a lookout.

Two agents knocked on the door of Apartment 1–L and identified themselves as police officers. A woman answered the door, and the agents spoke briefly in the vestibule of the apartment with her as well as a male occupant. Meanwhile, as Agent Garcia approached Apartment 1–J to knock on the door, he saw Gomez opening it wide enough to look outside. Garcia identified himself as a police officer and said he wanted to talk to Gomez. Gomez immediately shut the door so Garcia began knocking firmly and repeating that he wanted to speak to Gomez. A woman in the apartment that had been identified as the lookout's residence opened her door, and Garcia, after identifying himself, instructed her to go back inside. Garcia heard what he believed to be the sound of Gomez scurrying about his apartment, and then he and other agents in the hallway heard the sound of glass crashing inside his Apartment 1–J.

Believing that Gomez was attempting to flee, two of the agents ran outside the building. Two others entered the apartment, quickly checked to see if anyone was there, and observed shattered glass windows leading to a fire escape. On a bed next to the shattered windows were plastic baggies containing white powder that later tested positive for cocaine. In an open box on a counter in the kitchen was an amount of cash and several small items. When defendant was apprehended a short distance from the apartment building his hand was bleeding, he was wearing only one shoe, and he was limping. After he was arrested and duly advised, in Spanish, of his constitutional rights, Gomez admitted that he was involved in the business of distributing cocaine.

■ Based on all of the facts and circumstances of this case, the Court con-

cludes that the DEA agents had an urgent need that justified a warrantless entry. The offense involved, distribution of cocaine, is a serious one. *Martinez-Gonzalez,* 686 F.2d at 100. Secondly, the agents acted to prevent the defendant's flight and the destruction or loss of evidence. *See Campbell,* 581 F.2d at 26 ("[C]ircumstances which, when viewed as of the time of entry, would lead a reasonable person to believe that unless an entry and arrest are made immediately the suspect may escape, destroy essential evidence or continue the commission of an on-going crime, represent exigencies of the type justifying immediate police action on probable cause without first obtaining a warrant."); *Gomez,* 633 F.2d at 1008 (Sounds of "commotion" and destruction of evidence established exigent circumstances sufficient to justify warrantless arrests.).

In addition, there can be little doubt that once the agents heard the sound of crashing glass, they had probable cause to believe that a crime was being committed. The agents had received information from a reliable informant that cocaine was being distributed from defendant's apartment. Although at least part of the basis for the informant's knowledge was the statement of another individual, the informant had himself identified defendant's apartment to the agents. After Gomez encountered the agents outside his apartment, they saw him immediately shut the door and they then heard the sound of glass crashing inside. The agents were "entitled to use their knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic...." *United States v. Manning,* 448 F.2d 992, 998–99 (2d Cir.) (en banc), *cert. denied,* 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 458 (1971). *See also Gomez,* 633 F.2d at 1006 ("[M]ere sight of agents was enough to tip off experienced narcotics dealers" that "they were in trouble and thus trigger destruction of evidence."). Defendant's reaction thus corroborated the information provided by the informant. *See id.* at 1007–08 (Suspect's retreat into

an apartment from agents' show of authority in the hallway is evidence of "consciousness of guilt," which is a factor to be considered in determining whether probable cause exists.) (citing *Sibron v. New York*, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904–05, 20 L.Ed.2d 917 (1968); *United States v. Soyka*, 394 F.2d 443, 453–54 (2d Cir.1968) (en banc) (Friendly, J.), *cert. denied*, 393 U.S. 1095, 89 S.Ct. 883, 21 L.Ed.2d 785 (1969)). *See generally Illinois v. Gates*, 462 U.S. 213, 230–41, 103 S.Ct. 2317, 2328–34, 76 L.Ed.2d 527 (1983). *See also United States v. Rueda*, 549 F.2d 865, 870 (2d Cir.1977), *quoted in United States v. Gaviria*, 805 F.2d 1108, 1115 (2d Cir. 1986) ("[E]vidence sufficient to show probable cause by corroborating even a previously unknown informant may be found in circumstances which do not actually establish the crime itself.").

Under the circumstances, the agents did not have ample time to get a telephonic search warrant before entering the apartment to prevent the destruction of evidence or the suspect's escape. *See Campbell*, 581 F.2d at 27 ("Once the information was verified, which took time, the agents were not obligated by the Fourth Amendment, in the face of such an emergency to then aggravate the risk of violence, escape and destruction of crucial evidence by waiting until a warrant could be obtained."). *See also Soyka*, 394 F.2d at 453–54 (rejecting rule that would allow suspect to retreat into apartment and destroy evidence).

Defendant has argued that the agents, realizing they could not obtain a warrant based solely on the information reported by the informant, intentionally placed themselves in a situation that would provoke the appearance of exigent circumstances. *See* Defendant's Memorandum of Law at 9–11. Defendant asserts that since the agents deliberately provided the "catalyst" for the events which developed, they may not now rely on the exigency exception to the warrant requirement. *Id.* at 10. It has been held that where an exigency is "of the agents' own making," they may then not then search the premises on the theory that the suspect would otherwise destroy evidence. *United States v. Segura*, 663 F.2d 411, 415 (2d Cir.1981), *aff'd*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). Moreover, the Court of Appeals for the Second Circuit has instructed that "we should be alert to any indication that law enforcement officers may be tempted to circumvent [restrictions on warrantless entry] and create exigent circumstances by terrorizing the occupants of a home in the hope of hearing telltale signs of commotion." *Gomez*, 633 F.2d at 1006. *See also Vasquez v. United States*, 454 U.S. 975, 983, 102 S.Ct. 528, 532, 70 L.Ed.2d 396 (1981) (Brennan, J., dissenting from denial of petition for cert.) (criticizing rule that would permit "law officers, in determining the time and manner of executing an arrest, to contrive their own exigency and thereby avoid the necessity of procuring a warrant before entering the home").

In *Segura*, defendant was arrested in the vestibule of an apartment building and then brought to a third-floor apartment, where agents knocked on the door, informed the inhabitants of the arrest, and then entered to conduct a search. 663 F.2d at 413. The Government argued that the agents' knock at the door of the apartment, along with commotion caused when they forcibly brought defendant there, alerted the inhabitants to the arrest and made the destruction of evidence a likely result. *Id.* at 415. The Court held that the agents were not entitled to invoke the exigency exception because "[t]hey had no need to drag Segura to his apartment or to knock at the door." *Id. See also United States v. Serna*, 625 F.Supp. 548, 555 (S.D.N.Y. 1985) (no exigency found where arrests were made far from house and Government offered no evidence to infer that occupants were aware of arrests until agents forced their way into home). In this case, by contrast, the Government has demonstrated that the agents reasonably perceived a clear need to enter defendant's apartment to prevent his escape and the destruction of evidence.

The Court is aware that "this type of situation may reoccur repeatedly and might

lend itself to too easy a by-pass of the constitutional requirement that probable cause should generally be assessed by a neutral and detached magistrate before the citizen's privacy is invaded." *United States v. Rosselli*, 506 F.2d 627, 630 (7th Cir.1974). The Court also takes note, however, that situations of this type lend themselves to an allegation by a defendant that "the emergency which did develop was contrived by the agents." *Id.* In this case, defendant has made no credible showing to support his assertions of the agents' bad faith. Further, this case presents no evidence of of the type of forceful or intrusive investigative conduct which was a focus of concern in *Gomez*. On the contrary, this case involves circumstances resembling those which the *Gomez* Court indicated would not bar reliance on the exigency exception. 633 F.2d at 1006 (Where suspicious noises would have occurred even if agents simply had knocked on door and requested admission, agents' conduct would not be deemed source of both probable cause and exigent circumstances.). *See also United States v. Vasquez*, 638 F.2d 507, 530–31 (2d Cir.1980), *cert. denied*, 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981) (distinguishing arrest inside home from arrest outside home). Accordingly, this Court is unwilling to adopt a rule abrogating agents' "right to pursue their investigation by seeking voluntary cooperation" from suspects or witnesses. *Rosselli*, 506 F.2d at 630. *See also United States v. Evans*, 629 F.Supp. 1544, 1550–51 (D.Conn. 1986) ("no impropriety" in agents' "presence outside the apartment nor in their knocking at the door"). *Cf. Reed*, 572 F.2d at 424 (Agents are not required to obtain warrant "at the earliest possible moment.").

### Evidence Found in Plain View

■ Once lawfully on the premises, the agents were permitted to conduct a cursory examination to check for third persons who might pose a threat to them or destroy evidence. *See, e.g., United States v. Jackson*, 778 F.2d 933, 937 (2d Cir.1985), *cert. denied*, —— U.S. ——, 107 S.Ct. 308, 93

L.Ed.2d 282 (1986) (citations omitted). The agents were entitled to perform "a security check—a very quick and limited pass through the premises," and to seize objects coming into plain view during the check. *Id.*

### Defendant's Statements After Arrest

■ Defendant argues that the statements which he made to agents after being apprehended must be excluded as the fruit of an illegal arrest. This Court, however, has determined that the agents' conduct in entering the apartment and seizing certain items was lawful. Thus, it follows that defendant was lawfully arrested. The Court has also determined that defendant was duly notified of his constitutional rights. Defendant does not claim that he did not understand his rights, or that his statements should be suppressed for some alternative reason.

Accordingly, defendant's motion to suppress certain physical evidence and statements is denied.