UNITED STATES of America, Appellee,

v.

**Errol MacDONALD,**
**Defendant–Appellant.**

**No. 277, Dockets 89–1262, 89–1263.**

United States Court of Appeals,
Second Circuit.

Argued Before the In Banc Court
June 25, 1990.

Decided Oct. 1, 1990.

Stephen Fishbein, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Kerri Martin Bartlett, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before OAKES, Chief Judge, and FEINBERG, MESKILL, NEWMAN, KEARSE, CARDAMONE, WINTER, PRATT, MINER, ALTIMARI, MAHONEY and WALKER, Circuit Judges.

ALTIMARI, Circuit Judge:

We granted rehearing *in banc* to consider (1) whether a warrantless entry was lawful pursuant to the exigent circumstances exception to the warrant requirement of the Fourth Amendment, and if so, (2) whether law enforcement agents improperly created the exigent circumstances. These issues arise from defendant Errol MacDonald's appeal from a judgment entered in the United States District Court for the Southern District of New York (Robert J. Ward, *Judge*) convicting MacDonald, after a jury trial, of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2, and of the use of a firearm in connection with a narcotics offense in violation of 18 U.S.C. §§ 924(c) and 2.

A divided panel of this Court reversed Judge Ward's finding that exigent circumstances justified a warrantless entry by law enforcement agents into a Manhattan apartment from which MacDonald and his associates operated a retail drug outlet, and remanded for the purpose of determining MacDonald's standing to assert the Fourth Amendment claim. *See United States v. Thomas*, 893 F.2d 482 (2d Cir. 1990). On *in banc* consideration, we agree with Judge Ward. We therefore vacate the decision of the panel and affirm the judgment of conviction entered in the district court.[1]

Noah Lipman, New York City, for defendant-appellant.

1. On this *in banc* consideration, we reverse the panel decision in *United States v. Thomas, supra*, only with respect to defendant MacDonald.

The panel's decision to affirm the conviction of codefendant Thomas was unanimous, and is not before us.

## BACKGROUND

The facts are undisputed, and we shall summarize only what is pertinent to the exigent circumstances issue.

In May 1988, an informant alerted the New York Drug Enforcement Task Force ("Task Force") of a possible narcotics operation utilizing two apartments in a Manhattan apartment building located at 321 Edgecombe Avenue. On the evening of September 8, 1988, agents of the Task Force established surveillance outside the apartment building. The agents observed numerous indications that a retail narcotics exchange was being operated out of Apartment 1-O, a one-room efficiency on the first floor.

Shortly before ten o'clock that evening, one of the agents of the Task Force, James Agee, went to Apartment 1-O in an attempt to transact an undercover purchase of narcotics. After knocking and being admitted by an unidentified man, Agent Agee encountered Paul Thomas, who was sitting in a chair next to the door and pointing a cocked 9 mm. semi-automatic weapon at the floor, but in Agee's direction. Defendant Errol MacDonald, who was sitting on a couch counting a stack of money, was within easy reach of a .357 magnum revolver. There were four other men, including the man who admitted Agee, in the apartment which contained large quantities of what appeared to Agee to be marijuana and cocaine. Agee detected the distinct odor of marijuana smoke. He handed the unidentified doorman a pre-recorded five dollar bill in return for a package of marijuana. Agee then immediately left the building and reported his observations to the other Task Force members waiting outside.

Approximately ten minutes after the controlled purchase, Agee returned to the apartment with reinforcements. After knocking on the door and identifying themselves, the agents heard the sounds of shuffling feet. They also simultaneously received a radio communication from agents remaining outside the building informing them that the occupants of the first floor apartment were attempting to escape through a bathroom window. The agents at the apartment door then used a battering ram to force entry.

The agents arrested five men in the apartment, four in the bathroom and one hiding in a closet. As they performed a security sweep of the apartment, they discovered in plain view the two loaded weapons, large quantities of cocaine and marijuana, narcotics paraphernalia, packaging materials and several thousand dollars in cash. Additional cash was recovered from the persons of the suspects. The unidentified sixth man, who only ten minutes earlier actually transacted the sale with Agee, had apparently escaped.

At a pretrial hearing, MacDonald moved to exclude the evidence recovered from Apartment 1-O. He maintained that the seizure of the physical evidence violated his Fourth Amendment right, since the agents entered the apartment without a warrant. The district court, however, denied the motion to suppress on the ground that exigent circumstances justified the warrantless entry. The district court first pointed to the gravity of the offenses involved and concluded that the "[p]resence of the narcotics and the weapons under the circumstances suggested that the defendants were engaged in ongoing criminal activities and were in a position to use the weapons thereby creating an emergency situation justifying immediate entry." The district court further found that the law enforcement agents' warrantless entry was justified by the need to prevent loss of evidence. The court noted that the agents had been informed that the suspects utilized at least one other apartment in the building and could easily have moved the contraband out of Apartment 1-O. The court also reasoned that "once the agents had knocked on the door and identified themselves, and the door was not opened, any delay in arresting the suspects would be likely to result in the destruction of evidence, particularly the cocaine, which could be disposed of easily, by being flushed down the bathroom toilet." Finally, the district court found that obtaining a warrant at approximately ten o'clock at

night "would have taken a matter of hours, thereby increasing the risk that evidence would be lost or destroyed."

Following his conviction after a jury trial, MacDonald appealed the district court's decision not to exclude the evidence. A majority of a panel of this Court reversed the district court, holding that the finding of exigent circumstances was clearly erroneous and that any exigency that may have existed after the agents knocked at the door was created by the pretextual conduct of law enforcement agents returning to the apartment and identifying themselves at the door. The panel remanded the matter to the district court for the purpose of determining whether MacDonald had standing to assert the claim under the Fourth Amendment. We then accepted the Government's suggestion to reconsider this case *in banc.*

### DISCUSSION

The warrant requirement of the Fourth Amendment guarantees the fundamental right to be free from government intrusion into the privacy of one's home. *See Payton v. New York*, 445 U.S. 573, 585–86, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980); *Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 368–69, 92 L.Ed. 436 (1948); *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886). It is well-settled, however, that the warrant requirement must yield in those situations where exigent circumstances demand that law enforcement agents act without delay. *See Warden v. Hayden*, 387 U.S. 294, 298–99, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782 (1967); *United States v. Crespo*, 834 F.2d 267, 270–71 (2d Cir.1987), *cert. denied*, 485 U.S. 1007, 108 S.Ct. 1471, 99 L.Ed.2d 700 (1988). The instant case affords us the opportunity to revisit the exigent circumstances exception to the warrant requirement.

■ We begin by noting the appropriate standards of review. A district court's determination as to whether exigent circumstances existed is fact-specific, and will not be reversed unless clearly erroneous. *United States v. Cattouse*, 846 F.2d 144,

146 (2d Cir.), *cert. denied*, 488 U.S. 929, 109 S.Ct. 316, 102 L.Ed.2d 335 (1988); *see Minnesota v. Olson*, —— U.S. ——, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85 (1990) (showing deference to the state court's "fact-specific" finding of exigent circumstances). Moreover, the test for determining whether a warrantless entry is justified by exigent circumstances is an objective one that turns on the district court's examination of the totality of circumstances confronting law enforcement agents in the particular case. *See United States v. Schaper*, 903 F.2d 891, 894 (2d Cir.1990); *United States v. Miles*, 889 F.2d 382, 383 (2d Cir.1989) (per curiam); *United States v. Zabare*, 871 F.2d 282, 290–91 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 161, 107 L.Ed.2d 119 (1989).

■ The essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an "urgent need" to render aid or take action. *Dorman v. United States*, 435 F.2d 385, 391 (D.C.Cir.1970) *(in banc)* (quoted in *United States v. Martinez–Gonzalez*, 686 F.2d 93, 100 (2d Cir.1982), and *Crespo*, 834 F.2d at 270). We have adopted the factors set out in *Dorman*, 435 F.2d at 392–93, as guideposts intended to facilitate the district court's determination. *See United States v. Reed*, 572 F.2d 412, 424 (2d Cir.), *cert. denied*, 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978); *see also United States v. Standridge*, 810 F.2d 1034, 1037 (11th Cir.) (per curiam), *cert. denied*, 481 U.S. 1072, 107 S.Ct. 2468, 95 L.Ed.2d 877 (1987); *United States v. Baldacchino*, 762 F.2d 170, 176 (1st Cir.1985); *United States v. Kulcsar*, 586 F.2d 1283, 1287 (8th Cir.1978); *United States v. Phillips*, 497 F.2d 1131, 1135 (9th Cir.1974); *United States v. Shye*, 492 F.2d 886, 891 (6th Cir.1974) (per curiam); *Vance v. North Carolina*, 432 F.2d 984, 990 (4th Cir.1970). The *Dorman* factors have been summarized as follows:

(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect "is reasonably believed to be armed"; (3) "a clear showing of probable cause ... to

believe that the suspect committed the crime"; (4) "strong reason to believe that the suspect is in the premises being entered"; (5) "a likelihood that the suspect will escape if not swiftly apprehended"; and (6) the peaceful circumstances of the entry.

*Reed,* 572 F.2d at 424 (quoting *Dorman,* 435 F.2d at 392–93). We have consistently emphasized that the *Dorman* factors are intended not as an exhaustive canon, but as an illustrative sampling of the kinds of facts to be taken into account. *See Crespo,* 834 F.2d at 270; *Martinez–Gonzalez,* 686 F.2d at 100. Sometimes the presence of a solitary factor suffices, *see, e.g., United States v. Gallo–Roman,* 816 F.2d 76, 79–80 (2d Cir.1987) (destruction of evidence), alternatively, a combination of several, *see, e.g., United States v. Callabrass,* 607 F.2d 559, 563–64 (2d Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980) (destruction of evidence and danger to public).

■ Applying the *Dorman* factors to the case at hand, the district court's determination was far from clearly erroneous. The following facts were ascertained by the district court at the pretrial suppression hearing. First, the ongoing sale and distribution of narcotics constituted a grave offense. Second, the defendant and at least one of his associates were armed with loaded, semi-automatic weapons. Third, the law enforcement agents had not only probable cause to suspect that a crime had been perpetrated but firsthand knowledge that ongoing crimes were transpiring. Fourth, the agents further knew that the defendant and his associates were in the apartment. Fifth, the likelihood that a suspect might escape if not swiftly apprehended was confirmed by the fact that the man who actually made the sale to Agent Agee had apparently escaped during the ten-minute interval that elapsed after the controlled purchase and before the agents entered the apartment. Sixth, the agents acted in accordance with the law, and first attempted to effect a peaceful entry by knocking and announcing themselves. Since all of the *Dorman* factors were present, we agree with Judge Ward

that the law enforcement agents' entry was justified. Indeed, "[u]nder the circumstances of this case, 'the exigencies of the situation made that course imperative.'" *Warden v. Hayden,* 387 U.S. at 298, 87 S.Ct. at 1645 (quoting *McDonald v. United States,* 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948)).

Not only was each of the *Dorman* factors fulfilled in the instant case, but several other factors are relevant. *See Martinez–Gonzalez,* 686 F.2d at 100. As the district court correctly determined, the volatile mix of drug sales, loaded weapons and likely drug abuse presented a clear and immediate danger to the law enforcement agents and the public at large. *See Olson,* 110 S.Ct. at 1690; *Cattouse,* 846 F.2d at 146–48; *United States v. Farra,* 725 F.2d 197, 199 (2d Cir.1984). In addition, the district court's finding that the agents were confronted by an urgent need to prevent the possible loss of evidence cannot be said to be clearly erroneous in light of the information that the suspects were using an unidentified apartment in the building to store narcotics, the ease with which the suspects could have disposed of the cocaine by flushing it down the toilet, and the possibility that the prerecorded five dollar bill used by Agent Agee in the undercover buy would be lost if the ongoing drug transactions were permitted to continue while the agents sought a warrant. *See Miles,* 889 F.2d at 383; *United States v. Campbell,* 581 F.2d 22, 26 (2d Cir.1978). Finally, the dangers of harm to law enforcement agents and the public, of the loss of evidence and of the escape of the suspects were aggravated by the additional time required for, and the impracticability of, obtaining a warrant at the late hour of day, while the apartment continued to be used as a retail drug outlet. *See Farra,* 725 F.2d at 199; *Campbell,* 581 F.2d at 26–27.

Consistent with well-settled law, the district court found that once the undercover agent had firsthand knowledge of the suspects' undertakings inside the apartment, exigent circumstances were present. The district court further found that the exigen-

cy was intensified when, ten minutes after the controlled buy, law enforcement agents knocked on the apartment door and announced themselves. At this point the agents heard the sound of shuffling of feet from inside the apartment and simultaneously received a radio transmission that the suspects were attempting to flee through a window of the first floor apartment. The defendant, however, contends that the agents intentionally created the exigency to circumvent the warrant requirement. We are unpersuaded by this argument for several reasons.

First, even if the agents had engaged in pretextual conduct by knocking and announcing themselves, the district court's finding that exigent circumstances existed prior to the knocking cannot be said to be clearly erroneous. Consequently, the warrantless entry was fully justified on the grounds of the prior existing exigent circumstances alone. Additionally, there is no doubt that the agent who made the undercover purchase would have been entitled to arrest the suspects in the apartment at the time of the purchase. A controlled purchase of narcotics by an undercover law enforcement agent "is a recognized and permissible means of investigation" employed to gather evidence of illegal conduct and to make lawful arrests. *United States v. Russell*, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). *See also United States v. Asencio*, 873 F.2d 639, 641 (2d Cir.1989) (even where agents are involved in selling narcotics in the course of an undercover operation subsequent conviction of defendant may be sustained). It follows that the undercover agent here did not need a warrant to reenter the apartment within ten minutes, having exited only to secure proper protection by obtaining reinforcements. This is not the kind of scenario that needs the detached judgment of a neutral magistrate to determine whether there is probable cause for an arrest and search. *See Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979).

Most importantly, the agents' conduct was perfectly proper. By knocking and announcing themselves, they acted in accordance with the law, attempting the "peaceful entry" contemplated in *Dorman*, 435 F.2d at 393. *See Miller v. United States*, 357 U.S. 301, 313, 78 S.Ct. 1190, 1197, 2 L.Ed.2d 1332 (1958) (the requirement of notice before forcing entry is a tradition deeply rooted in Anglo–American common law). *See also* 18 U.S.C. § 3109 (establishing a notice requirement in executing a warrant); *United States v. Little*, 753 F.2d 1420, 1435 (9th Cir.1984) (notice requirement provides protection from violence, safeguards individual privacy and protects against needless destruction of private property); *cf. United States v. Spinelli*, 848 F.2d 26, 29 (2d Cir.1988) (exigent circumstances may sometimes justify noncompliance with notice requirement). Exigent circumstances are not to be disregarded simply because the suspects chose to respond to the agents' lawful conduct by attempting to escape, destroy evidence, or engage in any other unlawful activity. The fact that the suspects may reasonably be expected to behave illegally does not prevent law enforcement agents from acting lawfully to afford the suspects the opportunity to do so. Thus, assuming *arguendo* that there were no exigent circumstances before the knock, the agents' conduct did not impermissibly create the circumstances occurring thereafter.

The argument that law enforcement agents created exigent circumstances in bad faith has been rejected in numerous other contexts. We have previously reasoned that agents did not intentionally design exigent circumstances by using: (1) an all white surveillance team in a predominantly black neighborhood, and thus exposing the agents to a great risk of detection, *Cattouse*, 846 F.2d at 147, 148; (2) marked buy money in a controlled drug deal, and thus compelling the agents to act immediately lest the money be dissipated, *id.;* and (3) counterfeit tickets marked void, and thus endangering the lives of agents and occasioning the possibility of destruction of evidence when the suspect unwrapped the package and discovered the markings, *Zabare*, 871 F.2d at 290. The United States Court of Appeals for the First Circuit has

held that a deceptive telephone call by agents advising the occupants of a motel room to vacate since their associates in a narcotics deal had been arrested was "a creative investigative effort and simply an example of good police work" rather than an impermissible effort to circumvent the arrest warrant requirement. *United States v. Rengifo,* 858 F.2d 800, 803 (1st Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1752, 104 L.Ed.2d 189 (1989).

The defendant asserts that *United States v. Segura,* 663 F.2d 411, 415 (2d Cir.1981), *aff'd on other grounds,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), betokens a contrary result here. It is, therefore, appropriate to revisit *Segura* and to make several clarifications. First, the facts of *Segura* are distinguishable from those of the case at hand. In that case, agents brought a suspect under arrest to the front door, displayed him to the occupants, and then sought to rely on the scurrying that occurred as an exigency to enter. That kind of contrived behavior on the part of law enforcement agents is far different than the agents' compliance with the law involved here.

In addition, *Segura* ought not to be understood to suggest that a district court in reaching a determination about exigent circumstances should attribute any significance to the subjective state of mind of law enforcement agents. As previously mentioned, we have repeatedly held that the determination of exigent circumstances is an objective one based on the totality of the circumstances confronting law enforcement agents. *See Schaper,* 903 F.2d at 894; *Miles,* 889 F.2d at 383; *Zabare,* 871 F.2d at 291. The Supreme Court's recent decision in *Horton v. California,* — U.S. —, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), confirms our approach. Rejecting the inadvertence requirement for a valid plain view seizure, the Court explained:

> The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement.

*Id.,* 110 S.Ct. at 2309. So here, the fact that the agent may be "interested" in having the occupants react in a way that provides exigent circumstances and may "fully expect[ ]" such a reaction does not invalidate action that is otherwise lawful. We simply shall not engage in futile speculation as to whether the agents actually expected the suspects to respond lawfully to their knock at the door. The fact that the agents brought along a battering ram changes nothing. The exigent circumstances known to the agents before they knocked sufficiently alerted them to the possibility that a forced entry would be necessary.

Finally, the holding in *Segura* was based on the principle articulated in *United States v. Allard,* 634 F.2d 1182, 1187 (9th Cir.1980), that law enforcement agents may not create their own exigencies "through illegal conduct." To the extent that *Segura* may be interpreted to extend this underlying rationale beyond illegal conduct, we repudiate such an expansive approach. Therefore, we hold that when law enforcement agents act in an entirely lawful manner, they do not impermissibly create exigent circumstances. Law enforcement agents are required to be innocent but not naive.

The defendant also argues that narcotics-related crimes so frequently involve exigent circumstances that the exception threatens to eviscerate the rule. Our clarification of the exigent circumstance exception is not intended to diminish in any respect the guarantees of the Fourth Amendment. The general rule prohibiting warrantless intrusions into the home perdures. *See Cattouse,* 846 F.2d at 148. If it is true that ongoing retail narcotics operations often confront law enforcement agents with exigent circumstances, we fail to see how such a sad reality constitutes a ground for declaring that the exigencies do not, in fact, exist. To disallow the exigent circumstances exception in these cases would be to tie the hands of law enforcement agents who are entrusted with the responsibility of combatting grave, ongoing crimes in a

manner fully consistent with the constitutional protection afforded to all citizens.

## CONCLUSION

In summation, numerous factors support Judge Ward's conclusion that exigent circumstances justified the warrantless entry. Those factors include: (1) the grave nature of the ongoing crimes; (2) the presence of loaded weapons; (3) a likelihood that the suspects were themselves using narcotics; (4) a clear and immediate threat of danger to law enforcement agents and to the public at large; (5) not only more than the minimum probable cause to believe, but actual knowledge, that the suspect committed the crime; (6) at least strong reason to believe the suspects were on the premises; (7) a likelihood turned to reality that a suspect might escape if not quickly apprehended; (8) an urgent need to prevent the loss of evidence; (9) the additional time required to obtain a warrant at the late hour of day; and (10) an attempt by the agents to enter peacefully. In addition, the lawful conduct of the law enforcement agents did not impermissibly trigger the exigent circumstances exception to the warrant requirement of the Fourth Amendment.

For all the above mentioned reasons, the decision of the original panel is vacated, and the judgment of conviction entered in the district court is affirmed.

KEARSE, Circuit Judge (joined by OAKES, Chief Judge, and FEINBERG, Circuit Judge), dissenting:

I respectfully dissent. In my view the record does not support the finding that, prior to the agents' return to the apartment and identification of themselves as police officers, there were exigent circumstances justifying a warrantless entry. There is of course some common ground between my views and those of the majority. Plainly there was probable cause, and I agree that *eventually* the circumstances became exigent. But probable cause is not the equivalent of exigency, and I cannot endorse what I view as the agents' deliberate creation of an exigency in order to circumvent the warrant requirement of the Fourth Amendment.

### The Lack of Exigency Prior to the Officers' Return

There is no doubt that there was probable cause to believe that narcotics were being sold in apartment 1-O. The government concedes that it had probable cause at least as of the time, some 30 minutes prior to the forced entry, when the agents interrogated persons who had just been in the apartment; and the observations of Agent Agee during his undercover buy of course added to the probable cause. But, notwithstanding the majority's apparent view to the contrary, *see ante* at 771 ("[c]onsistent with well-settled law, the district court found that once the undercover agent had firsthand knowledge of the suspects' undertakings inside the apartment, exigent circumstances were present"), probable cause is not tantamount to exigent circumstances. I know of no law, settled or otherwise, that mere firsthand knowledge of a crime constitutes exigent circumstances permitting a warrantless entry.

Nor do I agree with the majority's view that the warrantless entry was justified by exigent circumstances on the ground that Agee could lawfully have arrested the occupants of the apartment when he was there during the undercover buy. Having probable cause for arrest, Agee could indeed have arrested them lawfully at that point, but that power was unrelated to any exigent circumstances; he could have arrested them then because he was lawfully in the apartment by reason of their consent. *See Payton v. New York*, 445 U.S. 573, 576, 100 S.Ct. 1371, 1374, 63 L.Ed.2d 639 (1980); *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Consent and exigent circumstances are separate exceptions to the warrant requirement and should not be confused. Further, consent is not boundless, *see State v. Douglas*, 123 Wis.2d 13, 365 N.W.2d 580, 584 (1985) (implied consent to enter to render emergency assistance did not constitute authorization for second entry two days later); *cf. United States v. Dichiarinte*,

445 F.2d 126, 129 (7th Cir.1971) ("a consent search is reasonable only if kept within the bounds of the actual consent"), and there is no basis for inferring that the occupants' consent to Agee's first entry extended to his later return. If such consent as was given is an appropriate justification for the entry in this case, it is difficult to see that today's decision does not give an agent license, *whenever* he has gained admission to the premises to make an undercover purchase, to leave and return bringing in his troops without need for a warrant.

In concluding that there were exigent circumstances before the agents returned to the apartment and made the suspects aware of their official presence, the majority emphasizes 10 factors that in its view support the district court's ruling. In my view its analysis is flawed.

"[T]he burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries," *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732 (1984), and the burden is a heavy one. This Court has repeatedly noted that no single fact is dispositive and that the ultimate question, to be answered in light of the totality of the circumstances, is whether law enforcement agents were confronted by an "urgent need" to make immediate entry. *United States v. Crespo*, 834 F.2d 267 (2d Cir.1987), *cert. denied*, 485 U.S. 1007, 108 S.Ct. 1471, 99 L.Ed.2d 700 (1988); *United States v. Martinez-Gonzalez*, 686 F.2d 93 (2d Cir.1982); *United States v. Reed*, 572 F.2d 412 (2d Cir.), *cert. denied*, 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978); *Dorman v. United States*, 435 F.2d 385 (D.C.Cir.1970).

We have not upheld warrantless entries where agents lacked an objective basis— other than their own actions unnecessarily alerting the defendants to their presence— to believe there was an urgent need to enter the premises without waiting to obtain a warrant. Thus, in *United States v. Reed*, 572 F.2d 412 (2d Cir.), *cert. denied*, 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978), we ruled that there were no exigent circumstances where the officers had made purchases from the targeted defendants some 2½ months earlier and had had no contact with them since:

> [I]nasmuch as the DEA Agents had no contact whatsoever with Reed or Goldsmith for two and one-half months prior to their arrest, and since there is no suggestion of a change in the status of the investigation during that period, we cannot conclude that exigent circumstances were present.

*Id.* at 424–25.

In *United States v. Agapito*, 620 F.2d 324 (2d Cir.), *cert. denied*, 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980), we invalidated a warrantless entry into a hotel room, which the government argued had been necessary in order to prevent the destruction of evidence. We noted that the only persons the agents had seen enter or leave the room during two days of surveillance had been arrested in the hotel lobby, 17 floors below the room, and that

> even if the agents here thought that accomplices remained in the room, there was no reason for them to believe that the accomplices knew of the arrests so that they might destroy evidence....

*Id.* at 336. We thus reversed the district court's denial of defendants' suppression motion since the circumstances were not exigent.

In *United States v. Segura*, 663 F.2d 411 (2d Cir.1981), *aff'd on other grounds*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), we upheld the district court's finding that the circumstances were not exigent where the police had been able safely to conduct surveillance of an apartment for three hours, had arrested one of the defendants at the front door of the building which "could not have been observed from [the apartment], and there was no evidence that anyone saw the arrest and reported it to the inhabitants of [the apartment]." *Id.* at 415. The agents had proceeded to create an exigency by dragging the arrested defendant to the apartment and banging on the door. We declined to "permit[ ] the agents to 'create their own exigencies ... and then "secure" the premises on the the-

ory that the occupants would otherwise destroy evidence.'" *Id.* (quoting *United States v. Allard,* 634 F.2d 1182, 1187 (9th Cir.1980)); *see United States v. Rosselli,* 506 F.2d 627, 630 (7th Cir.1974).

The principal factor relied on by the majority in the present case to reach the conclusion that there was an urgent need to enter without a warrant is that narcotics trafficking is a grave offense. Indeed it is; but though certain types of crimes, such as attempted murder or arson, create an inherent exigency while in progress, narcotics trafficking is not of that genre. There has never been an exigent circumstances exception permitting a warrantless entry simply because the offense involves narcotics. Nor was an exigency created in the present case by the fact that there were firearms in the apartment. "We often have taken judicial notice that, to substantial dealers in narcotics, firearms are as much tools of the trade as are the commonly recognized articles of narcotics paraphernalia." *United States v. Crespo,* 834 F.2d 267, 271 (2d Cir.1987), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1471, 99 L.Ed.2d 700 (1988). *Accord United States v. Torres,* 901 F.2d 205, 235 (2d Cir.1990) ("tools of the trade"); *United States v. Premises & Property at 4492 South Livonia Rd.,* 889 F.2d 1258, 1269 (2d Cir.1989) (same); *United States v. Rivera,* 844 F.2d 916, 926 (2d Cir.1988) (same); *United States v. Fernandez,* 829 F.2d 363, 367 (2d Cir.1987) (per curiam) (same). Thus, emphasis on the presence of firearms for the view that the circumstances were exigent suggests that whenever there is probable cause to believe that narcotics offenses are being committed, the agents should be allowed to ignore the warrant requirement.

The majority's concern that the agents and the public were in danger appears to be premised on the presence of firearms in the apartment and the generally violent nature of the narcotics trafficking business. (The suggestion that the suspects themselves had likely been smoking marijuana in the apartment goes beyond the record. Agee testified that he had smelled marijuana smoke but that he did not see any of the suspects smoking.) There is of course an inherent danger when crime is ongoing and the perpetrators wish (a) to continue and (b) to escape capture. This danger is not of emergency proportions, however, when the perpetrators are unaware that they are under suspicion, especially where they have not taken such security precautions as posting lookouts.

The total lack of awareness by the suspects in the present case, prior to the agents' return to the apartment, is virtually ignored by the majority. Thus, in concluding that there was a likelihood that the suspects would escape and evidence would be destroyed, the majority apparently sees no significance in the fact that this operation had been ongoing in apartment 1-O since May, *i.e.,* some four months before the agents' surveillance, and that there was no reason to believe it would be moved. (The fact that the suspects had a second apartment in the building did not suggest that the narcotics seen by Agee would likely be moved out of 1-O. The government's informant said she had seen narcotics stored in both apartments, not that there was a shifting or compartmentalized operation.) There was no basis for believing that the occupants of the apartment had been alerted to the September 8 surveillance prior to the agents' announcement of their official presence. The agents had received no information and had seen no indication that the suspects had any kind of security devices in the apartment or had posted any lookouts in the area. The surveillance was conducted by a team of agents whose ethnic makeup matched that of the civilians coming and going in the neighborhood. The surveillance was inconspicuous; the building was large, and there was a good deal of traffic in and out with respect to apartments other than 1-O; the agents' vehicles were placed so circumspectly that even Agee did not know where those other than his own were parked. An agent followed Agee into the building when he made his controlled buy, and was so discreet that even Agee could not spot him.

The surveilling agents' questioning of visitors to apartment 1-O was likewise circumspect. They interrogated the occu-

pants of only one car, which they took care not to intercept until it was several blocks away from the building and could not be seen by the suspects. Nor did anything that occurred during Agee's subsequent purchase appear to alert the suspects. Agee testified that none of the occupants of the apartment knew who he was. He had never seen any of them before. There was simply nothing in the record to suggest that the suspects would suddenly, after at least four months of operation, start to destroy their business assets, nor any indication that a suspect who left the apartment (which was apparently used more as a stash pad than as a residence) was somehow "escap[ing]," see, e.g., ante at 770, rather than leaving temporarily.

Finally, though the majority also relies on the difficulty that the agents would have had in obtaining a search warrant speedily because of the lateness of the hour at which they entered, I do not believe the government met its burden of showing that the timing was a permissible justification. Agee testified that there was never any discussion whatever of the possibility of obtaining a warrant. Further, the government concedes that the agents had probable cause to obtain a warrant at least a half-hour before their forced entry, i.e., as of the time they obtained statements from persons who had just come from the apartment, confirming the agents' existing information from the informant and from their own observations of the stream of 15–20 quick visits to the apartment. I do not believe we should allow law enforcement officers who have probable cause early to tarry and then justify a warrantless entry on the basis of the lateness of the hour.

In sum, though the majority correctly notes that the offenses were grave, firearms were present, and there was ample probable cause for arrest or a search warrant, I do not believe it can be found, considering the totality of the circumstances, that there was any urgency for the agents to enter without obtaining a warrant.

### The Eventually Contrived Exigency

When the agents returned to the apartment and announced their official presence, there were sounds of haste within, and some of the occupants of the apartment tried to climb out of the apartment window. At that point there was reason to fear that the suspects would attempt to escape or destroy evidence, and exigent circumstances existed. But I do not believe we should allow law enforcement agents deliberately to create an exigency in order to justify a warrantless entry.

I find it difficult to conceive of the officers' return to the apartment as anything other than pretext, in an effort to precipitate a crisis that did not then exist. Though Agee stated that he returned in the hope that the occupants would give him consent to search the apartment, that explanation should, in the circumstances, be found not credible as a matter of law. Agee testified that when he made his undercover purchase, he saw two firearms in the apartment, and one of them was held cocked and pointed in his direction while he was in the apartment. It was not objectively reasonable for the officers to hold any belief that suspects who took such precautions during an apparently innocuous buy would voluntarily consent to a search by law enforcement officers. Since the agents' suggestion that they returned because they thought they could gain entrance to search by consent defies credulity, and since the agents plainly anticipated that the announcement of their identity would precipitate an exigency, for they came armed with a battering ram, I think the agents must be regarded as having deliberately created the exigency precisely to justify their warrantless entry. We should not endorse such contrivances by law enforcement officials in their efforts to circumvent the Fourth Amendment's warrant requirement.

### Conclusion

The majority's ruling today gives law enforcement officers broad license to enter premises without a warrant. Apparently, they need no more than to have probable cause for belief that there is ongoing narcotics trafficking within and to request en-

try; if they hear any sounds in response other than the purest of verbal refusals, they can justify a warrantless entry by their fear that evidence will be destroyed or that suspects will escape. Indeed, it appears that the majority would allow the agents to enter simply on the basis that one agent had recently been on the premises by consent and witnessed the trafficking. After this decision there appears to be little left of the warrant requirement in narcotics cases.

The totality of the circumstances in this case reveals an entrenched narcotics operation, carried on in apartment 1-O for at least four months, by persons who, before the agents' trumpeting of their official presence, were totally unaware of the surveillance, of the interrogation of their customers, and of the undercover nature of Agee's purchase. I believe that on this record the finding that there was an urgent need to disregard the Fourth Amendment's warrant requirement is clearly erroneous.

Accordingly, I would vacate MacDonald's conviction and remand to the district court for a finding as to whether or not he had standing to challenge the warrantless entry.