**Bonnie KEENEY, administratrix of the Estate of Edward J. Nolan, Plaintiff,**

**v.**

**CITY OF NEW LONDON, et al, Defendants.**

**No. CIV.A.3–99–CV–2096 (JCH).**

United States District Court, D. Connecticut.

March 25, 2002.

---

C. Michael Bradley, Westerly, RI, for Plaintiff.

Ralph J. Monaco, Conway & Londregan, New London, CT, Kerry R. Callahan, James Newhall Tallberg, Updike, Kelly & Spellacy, P.C., Hartford, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 43]

HALL, District Judge.

In this case, the plaintiff, Bonnie Keeney ("Keeney"), filed suit on behalf of the decedent, Edward Nolan ("Nolan"), for violations of Nolan's constitutional rights and state causes of action for wrongful death, assault and battery, and intentional infliction of emotional distress. Keeney alleges that New London police officers, Graham Mugovero ("Mugovero"), Charles Persi ("Persi"), Michael Meehan ("Meehan"), Gaspar Garcia ("Garcia"), and Lawrence Keating ("Keating"), violated Nolan's

rights under the Fourth and Fourteenth Amendments on October 6, 1997. Keeney also asserts grounds for municipal liability against the City of New London based on the police officers' actions. The defendants filed a motion for summary judgment, challenging all Keeney's claims, that was joined on December 27, 2001. The court held oral argument on February 19, 2002 and now addresses the issues raised in the hearing and the pleadings.

## I. BACKGROUND

On October 6, 1997, Mugovero and Persi were on foot patrol in New London. The officers claim that Donald Albert approached them with information that Nolan, identified by Albert only as "Ed," was acting strangely and breaking tree limbs. The officers further claim that they subsequently encountered Nolan and that he assumed a fighting stance and rambled incoherently. It is undisputed that Nolan fled from the officers, and the officers reported to headquarters that they were pursuing a psychiatric patient. Mugovero and Persi followed Nolan to 43 Bank Street, where they were joined by Garcia, Keating, and Meehan.

The officers could not gain entry to the building, so the police contacted Steve Linicus ("Linicus"), the building manager. Linicus opened the security door, and the police officers described the individual they had pursued to the building. Linicus identified Nolan based on the description and stated that Nolan probably stopped taking his medication. Linicus led the officers to Nolan's apartment and used a master key to unlock the door. The officers had problems opening the unlocked door, requiring Mugovero to force the door open with his foot.

Nolan was not in the apartment, but Meehan radioed headquarters with Nolan's possible location based on the report of a

motorist. Mugovero, Persi, Garcia, Keating, and Meehan converged on the Hygenic Building at the corner of Bank Street and Golden Street. Mugovero found Nolan at the Hygenic Building, standing on the remnants of a stone foundation.

At this point, the plaintiff vigorously disputes the defendants' version of the facts. The plaintiff claims that the officers rushed Nolan and pummeled him. The defendants claim that Nolan jumped from the stone foundation and lunged at Mugovero. They further claim that, after the other officers started to assist Mugovero in subduing Nolan, Nolan reached for Mugovero's weapon. It is undisputed, however, that Keating struck Nolan several times in the face after being hit by Nolan and that Mugovero struck Nolan several times in the face after Nolan reached for his gun. Further, it is undisputed that, once the officers subdued Nolan, they handcuffed him in a prone position and used his shoelaces to tie his feet together. The officers then contacted emergency medical personnel. The police officers, witnesses that arrived after the officers subdued Nolan, and the EMT personnel provide several different versions of the subsequent events prior to Nolan's death.

## II. DISCUSSION

Summary judgment is only appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2nd Cir.2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir.1994)). However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading,

but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting *First Natl. Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)) (alteration in original and internal quotations omitted). If little or no evidence supports the non-moving party's case, there is no genuine issue of material fact and summary judgment may be appropriate. *Gallo*, 22 F.3d at 1223–24.

In assessing the record to determine if genuine issues of material fact exist, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir.1994). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000).

### A. Warrantless Search Claim

The plaintiff claims that the defendants violated Nolan's right to be free from unreasonable searches when they entered his home without a search warrant. The defendants claim that exigent circumstances existed for them to believe that Nolan posed a danger to himself or others. The court must determine whether the undisputed evidence demonstrates exigent circumstances to justify the officers' entry without a search warrant.

■ Under the Fourth Amendment of the United States Constitution, every citizen has the right to be free from unreasonable searches, including the right to be free from searches of the home absent a search warrant supported by probable cause. U.S. Const. amend. IV; *Wilson v. Layne*, 526 U.S. 603, 610, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). A warrantless search of a home is presumptively unreasonable. *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir.1998). Officers may enter a home without a search warrant, however, if exigent circumstances exist that require urgent police action. *United States v. Fields*, 113 F.3d 313, 322–23 (2d Cir.1997); *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir.1990) (en banc). The Second Circuit considers six factors as guides to determining whether immediate police action is necessary:

(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause ... to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

*Fields*, 113 F.3d at 323 (quoting *MacDonald*, 916 F.2d at 769–70).

■ These factors illustrate the type of facts relevant to the exigency inquiry. *MacDonald*, 916 F.2d at 770. The list of factors, however, is not exhaustive, and not all of the facts listed must be present to find exigent circumstances. *Id.* For example, a warrantless search of a home may be justified in cases where the police are in "hot pursuit" of a fleeing suspect for whom they have probable cause to believe he committed a crime, *United States v. Martinez–Gonzalez*, 686 F.2d 93, 101–02 (2d Cir.1982), or where the police reasonably believe that an individual poses a danger to himself or the public, *Tierney*, 133 F.3d at 196–97. The standard for exigent circumstances is objective and must take into account the totality of the circumstances facing the officer. *MacDonald*, 916 F.2d at 769.

The officers in this case relied on Connecticut General Statutes § 17a–503(a) as the basis for taking Nolan into custody. That section provides that:

Any police officer who has reasonable cause to believe that a person has psychiatric disabilities and is dangerous to himself or herself or others or gravely disabled, and in need of immediate care and treatment, may take such person into custody and take or cause such person to be taken to a general hospital for emergency examination under this section.

Conn. Gen.Stat. § 17a–503(a). The plaintiff challenges whether the defendants had reasonable cause to believe that Nolan posed a danger to himself or others, as required by the statute. Specifically, Keeney emphasizes possible factual discrepancies in the timing of events before Mugovero and Persi encountered Nolan. Keeney argues that the officers did not speak to Albert before meeting Nolan and had no knowledge of any alleged vandalism before deciding to take Nolan into custody. The plaintiff argues that Nolan's conduct in front of Mugovero and Persi would not justify a belief that Nolan posed a danger to himself or others.

■ Keeney presents no specific facts that dispute the claims of Mugovero and Persi that, when they approached Nolan and identified themselves as police officers, he "balled his hands into fists, assumed a fighting position and rambled in incoherent sentences." Mugovero Aff. ¶ 9; Persi Aff. ¶ 7; *see also* Mugovero Depo. (May 29,

2001), at 37. Mugovero noticed, as he and Persi approached, that Nolan appeared excited and was sweating profusely.[1] Mugovero Depo. at 37. Nolan then fled from the officers. The police waited for the building manager, Linicus, to open the security door and described the man they were pursuing. Based on the description, Linicus identified Nolan and remarked that he must have stopped taking his medication. Based on all of this information, the officers directed Linicus to open Nolan's apartment door. When the unlocked door would not open, Mugovero may have used some degree of force to open it.

Although Keeney denies the officers' testimony, she has not set forth specific facts that raise a genuine issue for trial regarding the preceding narrative. Viewing the facts in the light most favorable to Keeney, however, the court would conclude that genuine issues of material fact exist regarding the officers' claims about Albert and vandalism on State Street because Keeney elicited testimony in depositions that calls into question the timing of different events before the officers saw Nolan. Therefore, the court must determine whether the officers' version of the encounter with Nolan and discussion with Linicus, absent the information from Albert and any observation of vandalism, is sufficient to establish a reasonable belief that Nolan posed a danger to himself or others.

After Mugovero and Persi approached Nolan, they knew that he was aggressive, that he was speaking incoherently, and that he fled from the police. Based on that evidence alone, the court would conclude that the officers had a reasonable basis to believe that Nolan was a threat to himself or others. The reasonableness of that belief would be further strengthened by Linicus's statement before the police entered Nolan's apartment. Therefore, the court concludes that the defendants had a reasonable belief, before they entered Nolan's apartment, that Nolan posed a danger to himself or others.[2]

Relying on the *Tierney* case alone, the court would conclude that the officers faced exigent circumstances that justified entering Nolan's home without a warrant. Further, applying the guiding factors in *MacDonald* leads to the same conclusion. In this case, the officers reasonably believed Nolan posed a danger to himself or others and had strong reason to believe Nolan was at the premises because they saw him enter the building. Therefore, the court concludes that the undisputed evidence demonstrates exigent circumstances that justified the defendants' entry into Nolan's home without a warrant.[3] The court grants summary judgment as to Keeney's claim of unreasonable search under the Fourth Amendment.

### B. Excessive Force Claim

 The plaintiff next claims that, when the officers confronted Nolan at the

---

1. Further, Keeney's counsel characterized the officers' dispatch call to include Nolan yelling in the background. Mugovero Depo. (May 29, 2001), at 22–23, 26.

2. Although not part of the analysis, the court notes that, in hindsight, the officers' belief was valid, as evidenced by the state of Nolan's room when they entered. Nolan had left his stove on high with the burners in a raised position and debris scattered around the stovetop. The situation created a fire hazard

that endangered not only Nolan but also the other occupants of Nolan's multi-unit dwelling. While hindsight cannot justify the officers' entry, the actual circumstances provide a hypothetical danger that a reasonable police officer in the defendants' position would necessarily consider in determining whether Nolan posed a danger to himself or others.

3. Given this conclusion, the court does not address the defendants' qualified immunity arguments in this regard.

Hygenic Building, they used excessive force. From the moment an individual is stopped, police conduct is subject to scrutiny for reasonableness under the Fourth Amendment. U.S. Const. amend. IV; *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). A person, even if lawfully detained, has a constitutional right to be free from the use of excessive force. *Graham*, 490 U.S. at 394–95, 109 S.Ct. 1865. On the other hand, a police officer is entitled to use such force as is reasonable in light of the circumstances and dangers facing him at the time of the encounter with a citizen. *Id.* at 396, 109 S.Ct. 1865. The police officer may use physical force upon another person when and to the extent it is reasonably necessary to effect a seizure. *Id.*

■ "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Officers are often forced to make split-second judgments, in circumstances that are tense, uncertain, and rapidly evolving, about the appropriate steps, including the amount of force, that are necessary in a particular situation. *Id.* at 397, 109 S.Ct. 1865. Whether a police officer has executed a seizure in a manner that violates the Constitution or whether the force employed was reasonable requires an inquiry of the relevant facts, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Hemphill v. Schott*, 141 F.3d 412, 417 (2d Cir.1998). The reasonableness inquiry is an objective balancing, given the totality of the circumstances, of "the nature and quality of the intrusion on an individual's Fourth Amendment interest against countervailing governmental interests at stake." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (quoting *Tennessee v. Gar-*

*ner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)) (internal quotations omitted).

■ The court analyzes separately the alleged force used before Nolan is handcuffed and restrained and the alleged force after he is thus subdued. Keeney presents no specific facts that dispute the claims of the officers that Nolan assumed an aggressive stance when the officers approached; that Nolan lunged at Mugovero, inciting a struggle between the officers and Nolan; and that Nolan reached for Mugovero's weapon during the struggle. Again, Keeney denies the officers' testimony, but she has not set forth specific facts that raise a genuine issue for trial. There is no evidence in the record that would justify a reasonable jury in accepting the plaintiff's version of the incident—that the officers charged Nolan and pummeled him without provocation. Accordingly, the court must determine whether the officers' response to Nolan's conduct was reasonable given the circumstances.

Keeney has argued that Keating's and Mugovero's multiple punches to Nolan's head while subduing Nolan constituted excessive force. The plaintiff has not presented any evidence challenging the reasonableness of the other officers' conduct before Nolan was subdued. Keeney submitted an expert report that opined that common police practices recognize that traditional techniques of force and intimidation, to include punches to the head and face, are not as effective in subduing mentally ill individuals. Viewing the evidence in the light most favorable to the plaintiff, the court cannot conclude as a matter of law that Mugovero's and Keating's conduct while subduing Nolan was reasonable.

Normally, the court would consider next whether Mugovero and Keating are entitled to qualified immunity for their conduct before Nolan was subdued. The defen-

dants only moved for qualified immunity, however, regarding the allegations after Nolan was subdued. They did not present an argument that they were entitled to qualified immunity for striking Nolan in the head and face. Accordingly, the court does not address whether qualified immunity applies to that conduct.

■ The court next turns to whether the officers' conduct after Nolan was subdued constitutes excessive force. As the court noted, the police officers, witnesses that arrived after the officers subdued Nolan, and the EMT personnel provide several different versions of the events after Nolan was subdued but before his death. Further, experts differed as to whether the officers' alleged conduct caused Nolan's death. The numerous disputed issues of material fact preclude summary judgment.

■ Finally, since the plaintiff has alleged a constitutional deprivation, the court, viewing the facts in the light most favorable to the plaintiff, must consider whether the defendants are entitled to qualified immunity for their conduct after Nolan was subdued. *See Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

> [A] government official sued in his individual capacity . . . is entitled to qualified immunity in any of three circumstances: (1) if the conduct attributed to him is not prohibited by federal law . . .; or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct . . .; or (3) if the defendant's action was 'objective[ly] legal[ly] reasonable[ ] . . . in light of the legal rules that were clearly established at the time it was taken.' These three issues should be approached in sequence, for if the second is resolved favorably to the official, the third becomes moot; a fa-

vorable resolution of the first moots both the second and the third.

*X–Men Security, Inc. v. Pataki,* 196 F.3d 56, 65–66 (2d Cir.1999) (citations omitted).

■ "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (citing *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "[W]hat 'clearly established' means in this context depends largely 'upon the level of generality at which the relevant legal rule' is to be established.'" *Id.* at 614, 119 S.Ct. 1692 (quoting *Anderson,* 483 U.S. at 639, 107 S.Ct. 3034). "A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct. The unlawfulness must be apparent." *McCullough v. Wyandanch Union Free Sch. Dist.,* 187 F.3d 272, 278 (2d Cir.1999) (citation omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Lauro v. Charles,* 219 F.3d 202, 214 (2d Cir.2000) (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034).

"The chronic difficulty with this analysis for courts is in accurately defining the right at issue." *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir.1998). The Second Circuit recognizes that in the context of "intentionally tortious harmful conduct employed in the absence of any legitimate government interest, the requisite degree

of particularity [in defining the contours of the right] is lessened." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 253 (2d Cir.2001). Thus, for example, once an individual is restrained by handcuffs and unable to defend himself, there is little legitimate government interest in continued use of force. *See O'Neill v. Krzeminski*, 839 F.2d 9, 13–14 (2d Cir.1988).

■ In this case, facts most favorable to the plaintiff establish that the defendants secured Nolan on the ground with handcuffs on his wrists and shoelaces around his ankles. The officers continued to place their weight on his back for several minutes or hog-tied Nolan while prohibiting the access of EMT personnel. Further, some witnesses alleged that the officers capstunned Nolan while he was restrained on the ground. These alleged facts raise a potential claim for excessive force and would violate clearly established law since the force occurred after Nolan was subdued. Further, the court concludes that no reasonable officer could believe that the alleged conduct of the officers was lawful after Nolan was handcuffed and on the ground with his feet tied together. According, viewing the incident in the light most favorable to the plaintiff, the officers are not entitled to qualified immunity.

## C. Municipal Liability Claim

■ Keeney claims, in her amended complaint, that New London is liable under section 1983 for its failure to train its police officers regarding the need to monitor arrestees, the dangers of hog-tying, and how to effectively deal with mentally compromised persons. Municipalities are subject to section 1983 liability where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Failure to train qualifies as a government policy or custom only where the "failure to train reflects deliberate indifference to the constitutional rights of [the municipality's] inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

■ The Second Circuit more fully articulated the circumstances where failure to train reflected a municipality's deliberate indifference and would be sufficient to conclude that the lack of training represented a government policy or custom. *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir.1992). To establish deliberate indifference from failure to train, the plaintiff must show (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* (quoting *City of Canton*, 489 U.S. at 390 n. 10, 109 S.Ct. 1197).

■ Keeney does not press the allegations of training regarding arrestee monitoring in her opposition despite New London's challenge that Keeney only provided conclusory statements about deliberate indifference in the complaint and had not adduced any factual support. The court briefly addresses the allegations based on the record before it. *See Amaker v. Foley*, 274 F.3d 677, 680–81 (2d Cir.2001) (holding that a court must still assess whether a moving party satisfied its burden on summary judgment, even if the non-moving party failed to respond). While the allegations describe common sit-

uations for the police department that would satisfy the first prong under *Walker*, Keeney has no factual evidence that would support a jury finding at trial on the second and third prongs. The facts presented by the plaintiff and all favorable inferences that can be drawn from them would not support a jury finding that monitoring arrestees involved difficult choices or that New London officers routinely mishandled those situations. Further, the evidence does not support a finding that wrong choices in those situations frequently lead to a deprivation of citizen's rights. Therefore, the court grants summary judgment on that ground for municipal liability.

 Next, the court addresses the alleged lack of training regarding the dangers of hog-tying and positional asphyxiation. Keeney has introduced expert testimony and reports that indicate a danger from hog-tying or a danger of positional asphyxiation from the defendants' conduct in placing weight on Nolan while he was restrained. That evidence may support a finding on the second and third prongs of the *Walker* standard.

Keeney has not presented evidence, however, that raises a material issue of fact regarding whether a policymaker knew to 'a moral certainty' that the police officers would encounter situations involving the dangers from hog-tying or positional asphyxiation. Keeney argues that New London's use of Gall Leg Restraints, which the city issues to police officers for use in police cruisers, raises a similar situation that would mandate training on the dangers of positional asphyxiation. The use of the restraints described by defendant Mugovero, however, would not lead to any danger of positional asphyxiation because, for the restraint to work properly according to the instructions submitted by the plaintiff and the procedure described by Mugovero, the Gall Leg Restraints must be used in a vehicle while the arrestee is in the sitting position, which avoids the dangers of positional asphyxiation. Therefore, the court grants summary judgment on Keeney's allegations that New London failed to train officers regarding the dangers of hog-tying or positional asphyxiation.

 Finally, addressing the allegations of training regarding how to effectively deal with mentally compromised persons, Keeney only proffers that New London did not oppose those allegations in its motion for summary judgment. The court notes that New London did challenge the allegations by claiming that Keeney only provided conclusory statements about deliberate indifference in the complaint and had not adduced any factual support. Keeney did submit an expert report, however, that noted Persi's comments about an increased population of mentally ill individuals in New London and statements by Mugovero and Persi that they did not receive any training on how to handle mentally compromised persons. Further, the expert report concluded that common police policies recognized the futility of standard techniques of intimidation and force against mentally ill individuals. The court concludes that the expert's report raises material issues of fact for each *Walker* factor—whether municipal officials knew to a moral certainty that officers would encounter mentally ill individuals, whether those encounters presented officers with a difficult choice regarding the use of force, and whether the wrong choice would lead to a deprivation of citizen's rights—that preclude summary judgment on this ground for municipal liability.

### D. State Law Claims

 The defendants offer several arguments with regard to the state claims

brought by Keeney. First, with regard to the wrongful death claim, the defendants argue that they would be entitled to qualified immunity under state law because their actions were objectively reasonable and that the plaintiff failed to establish causation. Connecticut recognizes a defense of qualified immunity for municipal employees engaged in discretionary acts except where, among other things, "the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm." *Colon v. City of New Haven*, 60 Conn.App. 178, 180–81, 758 A.2d 900 (2000) (quoting *Evon v. Andrews*, 211 Conn. 501, 505, 559 A.2d 1131 (1989)) (internal quotations omitted). In this case, viewing the facts in the light most favorable to the plaintiff, the officers' alleged use of force after the plaintiff was handcuffed posed an apparent and imminent harm to Nolan. Accordingly, the defendants would not be entitled to qualified immunity under state law given the record, considered in the light most favorable to the plaintiff. Further, the court has concluded already that disputes between the parties' experts preclude summary judgment based solely on causation.[4] Therefore, the court denies summary judgment on the wrongful death claim.

■ Second, the defendants argue, with regard to the assault and battery cause of action, that the amount of force used was justified under Connecticut law. The defendants cite Connecticut General Statutes § 53a–22(b), but that statute permits only reasonable use of force. *See,* *e.g., State v. Smith,* 63 Conn.App. 228, 240, 775 A.2d 313 (2001). This court concluded, *supra,* that disputed issues of material fact preclude judgment as a matter of law regarding the reasonableness of the force used by Mugovero and Keating before Nolan was subdued and the force used by all the defendants after the plaintiff was restrained on the ground. Therefore, the court denies summary judgment on the assault and battery claim.

■ Third, and finally, the defendants argue, with regard to the intentional infliction of emotional distress claim, that the defendants' alleged conduct would not satisfy the "extreme and outrageous" prong under Connecticut law because the officers acted reasonably. Witnesses to the incident after Nolan was subdued stated that the officers capstunned Nolan twice while he lay motionless and joked about the spraying. After viewing the evidence in the light most favorable to the plaintiff, the court cannot conclude as a matter of law that the officers' conduct did not exceed all bounds usually tolerated by decent society. *See DeLaurentis v. New Haven,* 220 Conn. 225, 267, 597 A.2d 807 (1991). Therefore, the court denies summary judgment on the emotional distress claim.[5]

## III. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment [Dkt. No. 43] is GRANTED IN PART and DENIED IN PART. As to the warrantless entry claim; any excessive force claims against the defendants for conduct while

---

4. The defendants cite cases that hold that an expert's opinion without references to specific facts cannot raise a material issue of fact. *See Reynolds v. County of San Diego,* 84 F.3d 1162, 1169 (9th Cir.1996); *Evers v. Gen. Motors Corp.,* 770 F.2d 984, 986 (11th Cir.1985). Plaintiff's expert, Dr. Werner Spitz, however, does reference specific facts in the record to conclude, based on autopsy photographs and witness statements, that Nolan's death was caused by positional asphyxiation.

5. Since federal constitutional and state tort claims remain, the court does not address the defendants' arguments that the court should decline pendant jurisdiction over the state claims or that the municipal indemnification statute, § 7–465, does not apply.

subduing Nolan, other than the punches to Nolan's head and face by Mugovero and Keating; and municipal liability claims for failure to train regarding arrestee monitoring and the dangers of hog-tying or positional asphyxiation, the court grants summary judgment. In all other respects, the motion is denied. Further, the Plaintiff's Motion to Strike [Dkt. No. 61] is denied as moot since the court did not rely on any of the evidence challenged.

**SO ORDERED.**